Please be seated. Good morning, everyone. So we have an unusual situation today. All of the cases on calendar are related. We've allotted 20 minutes total to address these cases, and we try to select the cases that incorporate all of the issues. But if there are some other issues that you want to address that you feel are not represented in the cases that we've selected for argument, please feel free to do so. Counsel for appellant, please approach and proceed. Thank you very much, Your Honor. William Bowen, appearing on behalf of Ms. Broadnax. Good morning. Good morning. Thank you. The issues that are being presented to the court today, based on the motion for dismiss. Could I ask you to speak up a little bit? I'm sorry. Am I being a little soft spoken? I apologize. Just a bit. I apologize, Your Honor. No problem. Ms. Broadnax has brought an employment case against a former employer, Adams & Associates, based on a termination that she faced in 2014, which she believes was motivated based on her protected status. The reason the case is here before you today is because of the motion to dismiss that was granted in the district court by Judge Nunley. And that kind of that motion to dismiss goes across the board because there seems to be, you can correct me if I'm wrong, but you seem to be taking a position that you don't have to plead more, that Judge Nunley was holding you to a higher standard than is required. And I guess, and you're kind of putting everything in one basket. And if I'm correctly reading the record, it doesn't seem to be that any of the plaintiffs are seeking leave to amend. So if we disagree with you about what the pleading standard is and we say that Judge Nunley got it right and he wasn't holding you to a higher standard, then is that the end of it? Well, we would ask to be sent back so that the cases can be litigated as previously pledged. So you want us to say that the pleading is adequate as is because you didn't say that you want us to send it back for leave to amend. You want us to send it back with the ruling that your pleading was adequate. Yes, Your Honor. Yes. But if we don't agree with you, then you're out. You're not asking for leave to amend. You're correct, Your Honor. In the brief that was presented in each of the cases, we did not ask for leave to amend. So you're taking, you know, I just want to understand. It's sort of like, you know, when you're all in, you're saying, I mean, I'm right and it's enough. And if we agree with you, then you go back and you, then, but if we disagree with you and we say that Iqbal stated that well-pleaded facts in a complaint must permit the court to infer more than the mere possibility of misconduct and we don't think you did that, then end of story. Yes, Your Honor. Okay, so you're putting it in that posture. Yes. I believe that the pleadings are adequate as they were presented to the district court, and we are asking to go back based on what we have presented so far, the pleadings as they were. All right, but if we don't agree with you and you're not asking for leave to amend, then that's the end of it. Well, then, Your Honor, I would ask for leave to amend then at this point. Well, but you didn't. No, I. You've, that's, and then how, let's just say we disagree that they're not adequate. Then we've got, what, seven people? There are eight cases. Eight total. Okay, eight. So then who all have different facts and we don't have any offers of what each person could say and they're not all similarly situated in the sense that I think one of the people grieved it and got hired back. And so that person, that person's in a completely different situation. Then we've got, I mean, we have all of these other facts and we have no showing of, here we are at the Court of Appeal and we have no showing of what facts you could show on each of them. Right, and, Your Honor, I've tried to focus on the issues that I felt were at issue in the decision that was made at the district court level, not to present new facts, not to present the employment histories that have come since the decisions have been made. For example, that Adams & Associates is no longer affiliated with the Sacramento Job Corps. These are issues. Time has gone on, but they're not the argument that I was prepared to make. Counsel, may I ask you, were these people employed by Sacramento Job Corps or were they employed by Adams? Adams was the contractor responsible, and so technically they were employees of Adams. Okay. And my understanding is that there was a joint understanding between two entities. It was the McConnell entity and Adams, but Adams was actually running the center. So if someone asked for it, one of the claims was for the release of personnel files. Yes. And so it's your position that Adams was the employee who had to release the files of previous employment with Sacramento Job Corps? How did that work? How would that work? It was my understanding during the transition period between the prior contractor for the center, which was Horizons and Adams, that a transition was made and personnel records were available and relied upon by Adams in that time period. So to the extent they were making decisions regarding hiring or termination or things of that nature with those records, that's what was being requested, and that's what we were arguing in that case were not produced. So if the statute says from a past or present employer, you would say that applies to Adams? I would say that the standard applies to an employer and that they were the employer. Well, we have to identify who the employer is. Right. So was Adams who was the past? So if somebody has been terminated, you know, all of the people were terminated or they were relieved their positions or whatever and they had to reapply, correct? Correct. So at that point, who was their past employer? So the situation that Your Honor is pointing out is that in this transition from Horizons to Adams, there is a transition of employer. Some of the elements we're arguing are the same for employment. There was a collective bargaining agreement which was in place. Who paid the wages? Who told the people what duties to perform? Who hired and fired? That would be some test for who the employer is. Right. And the argument that we would make would be that Horizons was the initial employer. There was a transition to Adams as the next employer. So their management people were on scene. They were the ones who were responsible for setting schedules and things of that nature. What in your complaint or you said you were led to believe that Adams had the records that belonged to Horizon? I mean, Horizon was the employer, presumably maintained personnel files. What leads you to believe that Adams had them? Even if they didn't have them after Horizons finished the transition period, because this is a period of time we're talking about between February when Adams is announced and then March when they make offers and actually come on site as the employer. Even if they were not in receipt of all Horizons files as they continued with employment, the job applications, the memos taken at interviews, the other documents that should have been maintained as part of a file for the applicants should be there. The documents that- The new personnel files. Yes. I would expect that for every person who transitioned, whether they were in fact hired or they were denied hire, as some of the cases differ on that, they would have a file at Adams. In other words, when I say Adams, I mean at the Sacramento Job Corps with Adams Management having possession of that file. So you're not necessarily suggesting that they had the Horizon personnel files for all of the employees of Horizon? No. And I'm not asking that they would go back and contact Horizon to try to find files that they don't personally have. But it's my belief that they would have. Again, even if it were just the root file of the application, resume, notes from interviews, things of that nature, there should be some portion of a file there. Well, the problem is because you don't want to tell us anything that we have to keep asking all of these questions. And, you know, Judge Nunley was in-you know, we're reviewing him for abusive discretion. And when you can't even, you know, when you can't even tell what happened, it's very difficult to say he abused his discretion. Well, I believe that the pleadings were clear as to what happened to each of the employees. And I'm sorry if we got off track from talking about Ms. Brodnax and the ten minutes that were allotted for her time. But to use her as an example, I believe that the pleadings are clear. But what do they allege? What do the pleadings allege? They allege that she faced discrimination based on her race and her age. That's just pleading the elements. Those are very conclusory allegations. And I think that Iqbal and Twombly require just a little bit more factual pleading. For instance, to say that there was somebody who was unprotected, who was treated more favorably, and name that person and what the more favorable treatment was. Okay. And, Your Honor, I do agree that what I was reciting was the basics of the causes of action she had. The facts, I believe, are there, that she was hired, she worked for a month, faced a false allegation of sleeping on the job, was terminated without due process, even though she was a member of the union and should have been allowed to go through a grievance procedure and stepped discipline. And so generally what we would see is that someone who did not have this protective status was also caught sleeping on the job and was not terminated. So to me, that's the missing link that you have in your allegations. And we did include a general allegation that she had observed other, particularly younger white co-workers who did things that could have warranted discipline and were not disciplined. That's too general, though, to me. I'm not speaking for anyone else, but our case precedent suggests that that's too general. And I think that's what Judge Nunley was trying to convey, that there has to be more specificity in those allegations.  All right. We'll give you a minute for a rebuttal. And you have, this was just your first case, so you have. All right. Thank you very much. All right. Thank you. Before we do that, let me just, for the record, say that the cases will be argued in the order listed on the docket. The cases of Ting v. Adams & Associates, Rhodes v. Adams & Associates, Nguyen v. Adams & Associates, Aspires v. Adams & Associates, and Taylor v. Adams & Associates were submitted on the briefs. We just heard, we're hearing argument now on Broadnax v. Adams & Associates. Thank you, Counsel. Good morning, Your Honors. Good morning. Good morning. May it please the Court, my name is John Adams. I represent the Appley Adams & Associates Incorporated. No relation. No relation. The district court applied the proper standard and correctly determined that appellant's first amendment complaint did not meet that standard. It did not apply a heightened pleading standard. It did not require the appellant to show a prima facie case of her claims. Accordingly, dismissal of the first amendment complaint was not in error, was entirely proper. I can talk about the pleading standard if you'd like. We know it. We're clear on that. I can address some of the points that were just made. I guess I'm a little curious in terms of it. The plaintiffs didn't seek leave to amend and basically stood their ground, and they didn't seek leave to amend before us. So can they seek leave to amend here? Maybe some people can state a plausible case, but what's your response to that from your perspective? My perspective is that it's too late at this point. You're absolutely correct. They did not ask for leave to amend. I believe it would not be proper to grant them that at this point. Counsel has made clear they believe these pleadings are sufficient, which is why they didn't seek leave to amend. And it would truly be futile at this point. The reason Judge Nunley did not grant them leave to amend when he granted the second motion to dismiss is because he determined that it would be futile. They could provide no additional factual allegations to support their claims. Well, did he just refuse to because he was standing on the grounds that I don't have to do more? Or I know at this point I don't doubt that there might be some more things, but I don't know how. Do we have to ferret that out? We do not because they were given two chances, two bites at the apple. The first order, the order granting the first motion to dismiss. Because all these people don't seem exactly alike to me. They're not. They're very different. In fact, you have some appellants who are saying they were discriminated against because they were a man and some because they were a woman. So obviously there are some conflicting inferences here. But allegations are the same. Discrimination on the basis of protected status. Right. And in fact, because they all lacked any factual specificity, they're all pretty much the same. They're all just recitations of the elements. In the first order, Judge Nunley gave a detailed analysis of exactly how each of these appellants' allegations were deficient. They came back. But that's not in the excerpts. The second order is. That's correct. The second order is. The first is not. But the second order recites. I previously gave you a detailed explanation. True. And I think we can take Judge Nunley at his word in his order that he did so. And I can tell you he absolutely did. As a litigant, I was a little dismayed, frankly, to see that there was a roadmap laid out for exactly how these plaintiffs could amend their complaints. And then they simply did not do so. And I think Judge Nunley saw that as well and saw, you know, they've been given the specific reasons how these complaints were deficient. They did not come back and correct those deficiencies. The only conclusion is they could not do so. And that's why I believe it's futile to allow them leave to amend at this point. Is there anything specific that you want to argue regarding Ms. Broadnack's complaint? Simply that her allegations are completely conclusory. There are only really two allegations that even come close to having any kind of specificity. Paragraph 33 of the first amendment complaint, which the agency observes, others were treated differently than she. As counsel said, there was a general allegation that others were treated differently. And as the panel pointed out, there were no specifics about that. It was not that someone outside of protected class was put into the specific position that she had once held. The lack of detail renders that allegation completely conclusory and thus not entitled to the presumption of truth, which means she cannot plausibly state a claim. Did she ever even allege that – I know there was a general allegation that other people have broken the rules and haven't been disciplined, but did she ever even allege that other people had been caught sleeping on the job and were not fired? I don't believe so. There are a lot of cases and a lot of facts. One of the appellants alleged that other employees were caught sleeping and were not terminated, but they did not allege that those employees fell under protected categories. I think that was the person that was found sleeping twice. Many of these appellants were found sleeping. That was the basis for several terminations. And I apologize that I may be conflating those facts, but I don't believe she did, no. No one ever specifically alleged that a non-minority was not terminated for being found sleeping. So what about the access to the records? So a person who is not rehired or whose employment is terminated does not have access to the defendant's employment records. How can such a person allege with specificity that he or she has been treated in a discriminatory manner? Well, so the code section in question, Labor Code Section 1198.5, specifically and only applies to employees and former employees. Right. There is another code section that provides that applicants be provided with any documents that they've signed. That's the only code section in the Labor Code that applies specifically to applicants obtaining documents. What about the former employees? So that's the conundrum that I was trying to question about because a number of these people had previously worked for Job Corps. I think almost all of them had previously worked for Job Corps. So why isn't it fair to say that they are past employees? They worked at the Job Corps Center. They worked for, prior to Adams & Associates, Horizons. That was their employer. The location where they worked was the Job Corps Center. Both Horizons. In the record, can we verify who the employer was? Well, they allege who their employer was. They say Sacramento Job Corps, but they allege. Well, I think they allege they worked at Sacramento Job Corps, and their employer was Adams & Associates. I believe it was Franklin. But Adams & Associates couldn't be their employer if they were applicants. Right. For the two who were terminated, they allege that Adams was their employer. Correct.  they allege that they applied to work for Adams & Associates. Okay, but did they, who did they say was their past employer? That's what I'm trying to get. Horizons. For whoever wanted the, let's, could you tell me in the record the, I can't remember which one of the plaintiffs wanted the records, but could you show me in the record or the complaint where they allege that the past employer was Horizons? So I believe that was Ms. Franklin. Franklin. And you're looking at her complaint? I'm looking. Correct. Yep, it looks like it's page 50. Page 59. She alleges she was a continuing employee at Sacramento Job Corps. So Ms. Franklin's complaint in the excerpts of record that I have. I have first amendment complaint for damages ER 59 of her excerpts of record, of the Franklin excerpts of record. Right. A continuing employee at Sacramento Job Corps, which is the site. That was the point that I was making. Where did, was there an allegation that Horizon was the past employer? So on page 42, paragraph 15, she alleges that McConnell, Jones, Lanier, and Murphy and Adams officially assumed the contract for Job Corps and replaced another corporation, Horizons Youth Services. But she identified them as a manager, not her employer. That's why I have the question whether or not there is a legitimate claim if Sacramento Job Corps was the employer. And the record's not clear on that. Well, I would need to go through more closely in the complaint, but she does allege that she applied to work for Adams and Associates. That begs the question because if she was employed by Sacramento Job Corps prior to her application, then that would still be the employer. And it's not clear from the record who the employer actually is. Paragraph 9, page 41. On or about August 2003, Plaintiff was hired as a residential advisor for the Sacramento Job Corps Center by a predecessor of defendant Adams. That doesn't tell us who the employer is. She said she was hired for the Sacramento Job Corps by a predecessor. It doesn't say in there who the employer is. Well, she said she was hired by her predecessor, and then several paragraphs later, she says Adams is the legal successor to Horizons Youth Services. But that presupposes that she's identified the predecessor as her employer, and this allegation does not do that. What's good for the goose is good for the game. There has to be something specific in the record that identifies the employer. If they identify the employer in their complaint, and we take the allegations as true that she worked for Sacramento Job Corps, we don't have anything in the record to refute that. All right. Adams took control of the contract for management of the Sacramento Job Corps Center, in or about March 2014. Management, that doesn't mean employee. Yeah, 59, she says she was a continuing employee at Sacramento Job Corps. That's the closest she comes to naming her employer. Right. I guess if sloppy pleading means she can't meet the standard, then sloppy pleading might mean she can. Well, I don't know. That's, I mean, that could cut either way. I mean, in terms of the personnel files, why would there be resistance to providing the personnel files in any event? We don't know that Adams had those personnel files. If Adams had the personnel files, would it be your position that they had no obligation? Because your position was they had no obligation to provide the personnel files. Under Labor Code Section 1198.5, they do not. But only if they are not a past employer. Right. If Adams was never her employer, then it would have no obligation to provide the files. But if Sacramento Job Corps were her employer and Adams is the managing agency for Sacramento Job Corps, there would be a duty? I don't think that's correct. Why not? Because the actual employer would then be the Sacramento Job Corps under that situation. Right. And the agent of the employer would. So if they're the managing corporation and Sacramento Job Corps has a duty and they've contracted all of those duties to the agency, why wouldn't the agency have to assume that duty under the law? Because they're not the actual employer. If I ask you, if Sacramento Job Corps is the employer and Adams is the managing agency for Sacramento Job Corps, Sacramento Job Corps has contracted all of its responsibilities to Adams, then why wouldn't Adams have that obligation to turn over any personnel files that Sacramento Job Corps had? Under those facts, it may.  But Sacramento Job Corps simply was not the employer. We don't know that. You may know that. I don't know that. All right. You've exceeded your time. One minute for rebuttal on Broadnax. Thank you very much, Your Honor. I did want to address the one issue that you were dealing with right there at the end about the nature of the employment relationship and whether it was continuing or not. I think that's one of the issues that is an ongoing concern for me. With several of the people involved in these cases, there's the fact that they were members of a union. And so, therefore, even though there was this transition of employment, there are certain expectations that are built into being part of a collective bargaining agreement that still continues, including that you have the same rights, seniority, et cetera. But that's a separate issue than the discrimination claims. Isn't that something that would be resolved through either the collective bargaining agreement or a lawsuit based on violation of the collective bargaining agreement? Well, you had Taylor. She went through all of that, right? Didn't Taylor employ? I think her name was Taylor. Vanessa Taylor. Vanessa Taylor. And then she got her job back. Yes. And there was a separate NLRB action. And the NLRB found that there was a continuing relationship that was violated. The citation that was made and that I was trying to follow up here was that the reason why so many of these people said we were denied our grievance procedure, we were denied due process, was because not they were trying to redo the NLRB action, but because we believe these are specific facts that show bad faith in the reasons being given for their termination. So that if an employer says, I believe that you're sleeping on the job, and here are the three ways that I'm going to violate your employment rights now to get you out the door today, I think that that is specific factual evidence. But going back to the issue of the personnel records, I thought you conceded when I asked the question earlier that they worked for Horizon Youth Services, that that was their employer. I said that that was the predecessor. Yes, Your Honor. Employer. Did you say employer? Yes, I did say employer. And I'm sorry if I'm trying to address two different arguments that are sort of close together, because I think what the court said was, we don't know what records Adams had, and we don't know what was there. And what I'm trying to do – I think what we're saying is that we don't know what Adams' responsibilities are with respect to the records. And if their only responsibility is for employment records of their former employers, and they were never the former employer of anyone except the, I believe, three people who were hired and then fired, that would be Horizon that would have any obligations for personnel records up until – I'll just pick the date, March 1, 2014. Okay. I see what you're saying, Your Honor. So what are you saying? What I was trying to say was that I felt that when you were raising the issue with counsel on what is the obligation between Horizons and the subsequent contractor as to what records were there or what was going on, the argument that I have is that there was a continuing employment relationship. Well, we're trying to figure out who the employer is. Right. I mean, it was just – Right. And you said that Horizon was the prior one, that Adams was this one, and then there was discussion, you know, Judge Rawlinson was trying to drill down, is Job Corps the employer or are these people – but you yourself, you're bringing the action and you told Judge Bolton that – was that Horizon? Horizon. Horizon. Right. Was the employer, and then Adams was the employer. Yes, and I want to clarify. Counsel, I think, was saying a very similar thing to what I am, which is that there's the Job Corps Center, there was the predecessor, Horizons, who I believe we pled was the employer, and then there was Adams, which was – And you pled, Taylor pled, that she was a continuing employee at Sacramento Job Corps. What does that mean? It means the point that I was trying to make, which is that because they were members of the union, it was not an on and off switch. Who was the employer? Horizons was the employer. That's the point that I was trying to make. Okay. Job Corps is just the site location. It's like an address. Yes. It's the organization of the buildings and the function that is provided under the Department of Labor. Okay. So Adams was not a past employee of Taylor then? But we would argue that they were, that there was this special – Because of the union contract. Because there was this special relationship between the union employees and between the continuing contract holder, which was Adams. But if they're no longer employed there, the CBA can't make a terminating employee an employee again. But it can control the terms of whether or not someone is offered employment, who's offered employment, and the grounds upon which someone is terminated. What California case says that once someone has been terminated and is reapplying, that they fall within the statute to be able to request employment records? What case are you relying upon that has interpreted that regulation or the labor code provision? I can't think of a specific reference to that, Your Honor. Instead, what I would refer to is the NLRB decision, which was in this case, which required that Ms. Taylor be rehired with the same seniority and continuing aspect. But those issues are issues for the Labor Board, not for this federal action. Correct. All right, thank you, Counsel. You're way over your time. But we will move to Franklin v. Adams & Associates. Could you please put five minutes on the clock?
judges: Rawlinson, Callahan, Bolton